UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MELISSA O' NEAL,<br>    Plaintiff,<br><br>v.<br><br>EVERSOURCE ENERGY, INC. &<br>UTILITY WORKERS UNION OF AMERICA,<br>LOCAL 369,<br>    Defendants | )<br>)<br>)<br>)   C.A. No.<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT UTLITIY WORKERS UNION OF AMERICA,
LOCAL 369'S NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1331, 1441, 1446, the Defendant Utility Workers Union of America, Local 369 ("Local 369" or "Union") hereby provides notice of the removal of this action on the basis of federal question jurisdiction from the Norfolk County Superior Court to the United States District Court for the District of Massachusetts. In support of removal, the Union states as follows:

**Procedural Background**

1.    This action was commenced in the Massachusetts Superior Court for Norfolk County on or about March 6, 2025 and assigned Docket No. 2582-cv-00264. A copy of Complaint is attached here as Exhibit A.

2.    The Union was served with the Summons and Complaint on June 13, 2025. A copy of the Summons is attached here as Exhibit B.

3.    The Union is the exclusive bargaining representative, as defined by the National Labor Relations Act, 29 U.S.C. § 159(a), for the established bargaining unit of Production & Maintenance and Office-Technical & Professional employees of Eversource Energy, Inc.

1

("Eversource"). The Plaintiff, Melissa O'Neal is a former employee of Eversource and was a member of the bargaining unit.

4. The Union and Eversource are parties to a collective bargaining agreement which covers employees in the bargaining unit. A copy of the collective bargaining agreement is attached here as Exhibit C. During the time she was employed by Eversource, Ms. O'Neal was covered by the collective bargaining agreement.

### Plaintiff's Claims

5. Ms. O'Neal alleges that the Union and Eversource discriminated against her on the basis of disability in violation of Mass. Gen. L. c. 151B (Count I). Ex. A, Compl. at ¶¶ 38. Specifically, she alleges that "Defendants denied [her request for reasonable accommodation]"; "Defendants failed to engage in the interactive process"; "Defendants' conduct related to her disability also created a hostile work environment"; and "Defendants terminated Plaintiff due to her disability." Id. at ¶¶ 41-44.

6. Ms. O'Neal also alleges that the Union and Eversource retaliated against her in violation of Mass. Gen. L. c. 151B (Count II). Id. at ¶ 46. Specifically, she alleges that she "was subjected to retaliation, which had the purpose of creating a hostile and humiliating work environment" and was terminated "[d]ue to Plaintiff's requests for accommodations to care for her disability." Id. at 47-48.

7. Ms. O'Neal also brings a breach of contract claim against the Union (Count III), alleging that "[a] binding and enforceable agreement, with consideration, existed between the Plaintiff and the Union in common law and through the CBA." Id. at 5, ¶ "2" [sic]. O'Neal alleges that the Union "breached the contract by failing to adhere to the terms of the CBA and protect Plaintiff from discrimination, retaliation and/or otherwise wrongful termination" and "by

failing to properly grieve Plaintiff's termination." Id. at 5, ¶¶ "3-4" [sic]. O'Neal alleges that she has suffered monetary damages. Id. at ¶ "5" [sic].

    8.    Ms. O'Neal alleges the following facts with respect to her claims against the Union:

    a. The Union President spoke to Eversource's human resources on O'Neal's behalf on or about July 2020 (id. at ¶¶ 22-23);

    b. The Union advised O'Neal to submit an updated doctor's letter to Eversource in January 2021 (id. at ¶ 26);

    c. The Union reviewed the reasonable accommodation letter with O'Neal and "did not see anything in the doctor's letter that would keep her from returning to work" (id. at ¶ 27);

    d. "O'Neal was working with the Union to get back to work but [Eversource] Human Resources failed to act until a termination letter was sent to her dated March 2, 2022, telling her she had until March 9, 2022 to report to work or else she would be considered having abandoned her position and employment" (id. at ¶ 30);

    e. After Ms. O'Neal was terminated for job abandonment on March 9, 2022, O'Neal "contacted the Union on March 10, 2022 for help and the Union told her to get a letter to return to work with no restrictions which she did under duress" (id. at ¶ 32-33);

    f. "The Union held a conference with Eversource, and it was determined to uphold the termination" (id. at ¶ 34);

    g. The Union submitted an information request to Eversource on April 1, 2022 seeking documents relating to Ms. O'Neal's leave (id. at ¶ 35);

    h. "Ms. O'Neal reached out to the Union on June 15, 2022, at which time the Union told her that they did not have success with Arbitrations over issues like hers and decided not to proceed with her case" (id. at ¶ 36).

9. Ms. O'Neal seeks judgment against the Union on her claims; attorneys fees, costs, and expert witness fees; compensatory damages for emotional distress; punitive damages pursuant to Mass. Gen. L. c. 151B, § 9; and prejudgment and post-judgment interest. Id. at 5.

## Grounds for Removal

10. The Union seeks removal of each of Ms. O'Neal's claims against the Union on the basis of federal question jurisdiction.

11. Pursuant to 28 U.S.C. § 1441(a), any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

12. Pursuant to 28 U.S.C. § 1331, "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

## Ms. O'Neal's Claims Against The Union Are Preempted by The National Labor Relations Act

13. Ms. O'Neal's discrimination, retaliation, and breach of contract claims against the Union invoke the Union's duty of fair representation and are therefore preempted by the National Labor Relations Act, 29 U.S.C. § 159(a), a statute over which this Court has federal question jurisdiction.

14. The duty of fair representation "derives from the union's status *qua* exclusive bargaining agent. It implicates section 9(a) of the NLRA, and 'includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" *BIW Deceived v. Loc. S6, Indus. Union of Marine & Shipbuilding Workers of Am., IAMAW Dist. Lodge 4*, 132

4

F.3d 824, 830 (1st Cir. 1997) (italics in original), quoting *Vaca v. Sipes,* 386 U.S. 171, 177 (1967). "A union's rights and duties as the exclusive bargaining agent in carrying out its representational functions" is an area where "the policy of the law is so dominated by the sweep of federal statutes that legal relations which they affect must be deemed governed by federal law having its source in those statutes, rather than by local law." *Condon v. Loc. 2944, United Steelworkers of Am., AFL-CIO, CLC*, 683 F.2d 590, 594–95 (1st Cir. 1982). Thus, "state law is preempted whenever a plaintiff's claim invokes rights derived from a union's duty of fair representation." *BIW Deceived*, 132 F.3d at 830.

15.  This Court has federal question jurisdiction over O'Neal's claims because her claims invoke the Union's duty of fair representation. "Whereas preemption by federal law is a defense that ordinarily does not give rise to federal question jurisdiction, 'Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" *BIW Deceived*, 132 F.3d at 831, quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987). Thus, "a district court possesses federal question jurisdiction when a complaint, though garbed in state-law raiment, sufficiently asserts a claim implicating the duty of fair representation." *BIW Deceived,* 132 F.3d at 831–32. *See also Rodgers v. Callaway Golf Operations, Inc.*, 796 F. Supp. 2d 232, 239 (D. Mass. 2011).

16.  Moreover, "[t]his powerful preemption principle…empowers federal courts to look beneath the face of the complaint to divine the underlying nature of a claim." *BIW Deceived*, 132 F.3d at 831. "A plaintiff may not, by the expedient of artful pleading, defeat a defendant's legitimate right to a federal forum." *Id.* Thus, a district court must "recharacterize a putative state-law claim as a federal claim when a review of the complaint, taken in context, reveals a colorable federal question within a field in which state law is completely preempted."

<u>Id.</u> at 832. *See also Rodgers v. Callaway Golf Operations, Inc.*, 796 F. Supp. 2d 232, 239-40 (D. Mass. 2011) (plaintiff's claim that union failed to file a grievance on his behalf for reasons he believed were discriminatory were preempted by federal law where "it is clear that plaintiff's claims, although labeled chapter 151B violations only, implicate the union's possible breach of its duty of fair representation.").

17.     Ms. O'Neal's discrimination and retaliation invoke the Union's duty of fair representation because those claims involve alleged conduct by the Union when acting in a representational capacity on behalf of O'Neal. Although Counts I (discrimination) and II (retaliation) are directed generally at "Defendants" (plural) and do not include particularized allegations of discriminatory or retaliatory conduct by the Union specifically, the underlying facts alleged in the Complaint make clear that O'Neal's claims against the Union stem from the Union's representational activities on her behalf. *See* Compl. at ¶ 22 ("O'Neal got the Union involved" in dispute with Eversource), ¶ 23 ("…after the Union President spoke to Human Resources on her behalf…"); ¶ 24 ("O'Neal never heard from Human Resources again once the Union was involved"); ¶ 26 ("O'Neal contacted the Union again and was told to get an updated doctor's letter about her reasonable accommodation..."); ¶ 27 ("O'Neal reviewed the reasonable accommodation letter that her doctor provided with the Union. The Union did not see anything in the doctor's letter that would keep her from returning to work."); ¶ 29 ("O'Neal stayed in contact with the Union and was told that Human Resources never received her doctor's letter"); ¶ 30 ("O'Neal was working with the Union to get back to work by Human Resources failed to act…"); ¶ 33 ("O'Neal again contacted the Union [] for help…"); ¶ 34 ("The Union held a conference with Eversource…"); ¶ 35 ("the Union requested information from the Leave Administration Department of Eversource"); ¶ 36 ("O'Neal reached out to the Union [] at which

time the Union told her that they did not have success with Arbitrations over issues like hers and decided not to proceed with her case.").

18.     Ms. O'Neal's breach of contract claim also implicates the Union's duty of fair representation and is therefore preempted. While styled as a claim "in common law and through the CBA" (Compl. at 5, ¶ "2"), the allegations concern the Union's conduct when acting in a representational capacity on her behalf. Specifically, O'Neal alleges that the Union breached the contract by "failing to adhere to the terms of the CBA and protect Plaintiff from discrimination, retaliation and/or otherwise wrongful termination" and by "failing to properly grieve Plaintiff's termination." Compl. at 5, ¶¶ "3"-"4". Because the Union was not Ms. O'Neal's employer, any duty the Union owed to her arose solely from the Union's role as exclusive bargaining representative for employees in the bargaining unit. Her breach of contract claim is therefore preempted. *See e.g. United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 373, (1990) ("The duty of fair representation is thus a matter of status rather than contract."); *Sousa v. Stop & Shop Supermarket Co.*, No. CIV.A.98-12629-GAO, 1999 WL 244643, at *1 (D. Mass. Apr. 16, 1999) ("A complaint alleging a breach of duty arising out of the collective-bargaining agreement signed by [a] Union as the bargaining agent for an individual employee is governed by federal law.").

### Ms. O'Neal's Breach of Contract Claim Against The Union is Preempted by Section 301 of the Labor Management Relations Act

19.     Ms. O'Neal's breach of contract claim against the Union (Count III) is also preempted by Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, because the claim is derived from and requires the Court to interpret a collective bargaining agreement.

20.     Section 301 allows suits for violations of "contracts between an employer and a labor organization representing employees in an industry affecting commerce, or between any

such labor organization" to be brought in any U.S. District Court having jurisdiction over the parties. 29 U.S.C. § 185(a). "[W]hile § 301 on its face is only a grant of federal jurisdiction, the Supreme Court has deemed labor contracts within its scope 'creatures of federal law' and 'treats section 301 as a warrant both for removing to federal court state law claims preempted by section 301 and then dismissing them.'" *Haggins v. Verizon New England, Inc.,* 648 F.3d 50, 54 (1st Cir. 2011), citing *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220–21 (1985); *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists,* 390 U.S. 557, 559–60 (1968)). "This doctrine applies most readily to state-law contract claims purporting to enforce CBAs covered by section 301, but it extends beyond this point to other claims whose enforcement interferes with federal labor law and policy." *Haggins*, 648 F.3d at 54 (cleaned up). Thus, "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 394 (1987). As the First Circuit has observed, "§ 301 preempts a state-law claim when 'the asserted state-law claim plausibly can be said to depend upon the meaning of one or more provisions within the collective bargaining agreement.'" *Haggins*, 648 F.3d at 54-55, quoting *Flibotte v. Pennsylvania Truck Lines, Inc.*, 131 F.3d 21, 26 (1st Cir. 1997).

21. A state-law claim will depend on the meaning of a collective bargaining agreement if "it alleges conduct that arguably constitutes a breach of duty that arises pursuant to a collective bargaining agreement," or "its resolution arguably hinges upon an interpretation of the collective bargaining agreement." *Id.,* quoting *United Steelworkers v. Rawson*, 495 U.S. 362, 369 (1990) (state-law tort action pre-empted by § 301 where the duty to the employee was created by a collective-bargaining agreement) and *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) (state-law claim preempted by § 301 where resolution of state-law claim is

8

"substantially dependent upon analysis of the term of an agreement made between the parties in a labor contract").

22.     Here, Ms. O'Neal's breach-of-contract claim alleges, on its face, a breach of the collective bargaining agreement, and therefore is preempted by Section 301. Compl. at 5, ¶¶ "1-4" [sic]. Specifically, she claims that the Union breached the collective bargaining agreement by "failing to properly grieve Plaintiff's termination" and by "failing to adhere to the terms of the CBA and protect Plaintiff from discrimination, retaliation and/or otherwise wrongful termination" *Id.* at ¶¶ "3-4" [sic]. Here, Ms. O'Neal's claim that the Union failed to properly grieve her termination directly invokes the collective bargaining agreement's discipline, grievance, and arbitration procedures, found at Articles XXXIII-XXXV. Ex. C at pp. 38-40 (page numbers refer to ECF headings). O'Neal also asserts an alleged duty of the Union, arising under the collective bargaining agreement, to "protect [her] from discrimination, retaliation and/or otherwise wrongful termination", which may be a reference to the "Mutual Obligations" language found at Article IV. *Id.* at p. 7. Finally, O'Neal's reference to "wrongful termination" invokes the collective bargaining agreement's so-called "just cause" provision, which is found in the "Management Rights" language of Article V. *Id.* at p. 8. Because Ms. O'Neal's breach of contract claim is "founded directly on rights created by [the] collective-bargaining agreement", and because the resolution of her claim is "substantially dependent on analysis of a collective-bargaining agreement", the claim is preempted by Section 301 of the LMRA. *Caterpillar Inc.,* 482 U.S. at 394 (1987).

### Notice to State Court and Adverse Parties

23.     In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings and orders served upon the Union are attached hereto and filed herewith.

24.   The Union is also filing a Notice of Notice of Removal with the Clerk for the Superior Court of Norfolk County, Massachusetts, and is serving a copy of the Notice upon Ms. O'Neal and Eversource as set forth in the certificate of service.

25.   Plaintiff's state-law claims against Eversource may be severed and remanded pursuant to 28 U.S.C. § 1441(c)(2).

WHEREFORE, Defendant Utility Workers Union of America, Local 369 herewith gives notice that the above action now pending against it in the Superior Court for the County of Norfolk, Commonwealth of Massachusetts, Docket No. 2582-cv-00264, is and shall be removed from the state court to this court.

    Respectfully submitted,

    UTILITY WORKERS UNION OF AMERICA, LOCAL 369,
    By its Attorney,

    /s/ Sasha N. Gillin
    Sasha N. Gillin, BBO No. 690769
    SEGAL ROITMAN, LLP
    33 Harrison Avenue, 7th Floor
    Boston, MA 02111
    (617) 742-0208, Ext. 258
    sgillin@segalroitman.com

**CERTIFICATE OF SERVICE**

    The undersigned does hereby certify that on this 27th day of June, 2025, I filed the foregoing document via the ECF system and served a copy of the foregoing document on the following counsel of record via email and certified mail, return receipt requested:

Suzanne Herold, Esq.
Herold Law Group, P.C.
50 Terminal Street
Building 2, Suite 716
Charlestown, MA 02129
suzie@heroldlawgroup.com

Angela L. Ruggiero, Senior Counsel
Eversource Energy
107 Selden Street
Berlin, CT 06037
angela.ruggiero@eversource.com

                                                /s/ Sasha N. Gillin
                                                Sasha N. Gillin, Esquire